UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1963(DSD/FLN)

Samuel S. Badio,

Petitioner,

v. **ORDER**

The United States of America and the Department of Justice, U.S. Immigration & Naturalization Service and Curtis Aljets, its District Director,

Respondents.

Douglas R. Rainbow, Esq., Rainbow Law Office, 250 Second Avenue South, Minneapolis, MN 55401, counsel for petitioner.

Gregory G. Brooker, Assistant United States Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, counsel for respondents.

This matter is before the court upon petitioner's request for a writ of habeas corpus. For the following reasons, the court denies the petition.

**BACKGROUND**

Petitioner is 34-year-old alien national of Liberia who was admitted to the United States as a lawful permanent resident on May 19, 1994. The respondent, Curtis Aljcts, is district director of

FILED 11-21-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 11-21-01
Deputy Clerk's Initials ______

the United States Immigration and Naturalization Service ("INS"), an instrumentality of the United States Department of Justice.

On March 19, 1999, the District Court for Hennepin County, Minnesota found petitioner guilty of criminal sexual conduct in the third degree under Minnesota law. After petitioner had served his sentence, respondent took him into custody pursuant to 8 U.S.C.A. 1226. Petitioner has been in detention continuously since that time. There are currently no criminal charges pending against petitioner.

The procedural posture of this case is as follows. On October 15, 1999, the INS issued a Notice to Appear charging petitioner with being deportable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as defined in INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A), sexual abuse of a minor. (Resp't Ex. A.) The INS detained Badio without bond pursuant to INA § 236(c)(1)(B), 8 U.S.C. § 1226(c)(1)(B). Id. at 4. Under INA 236(c)(1)(B), 8 U.S.C. § 1226(c)(1)(B), detention of criminal aliens is mandatory. See 8 U.S.C. § 1226(c)(1999)("The Attorney General shall take into custody any alien who ... is deportable by reason having committed any offense covered in section 1227(a)(2)(A)(i), (A)(iii), (B), (C) or (D) of this title,....").

The immigration judge conducted Badio's removal hearing on November 18, December 2, and December 23, 1999, and January 27, February 3, February 24, and March 3, 2000. (Resp't Ex. H.) On December 2, 1999, petitioner's attorney conceded the charge of removability set forth in the Notice to Appear. Id. at 8-9. Petitioner applied for withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 12319(b)(3)(A), and under Article 3 of the Convention Against Torture, as implemented in 8 C.F.R. 208.16(c). Id. at 9. At the hearing, the INS argued that petitioner was ineligible for withholding of removal because he had been convicted of a particularly serious crime. Id. at 9-10.

In an oral decision on March 3, 2000, the immigration judge held that petitioner's conviction for criminal sexual conduct in the third degree was not a particularly serious crime and granted petitioner withholding of removal to Liberia under INA § 241(b)(3)(A). (Resp't Ex. F; Ex. I at 22.) Petitioner was ordered deported to any country but Liberia. (Resp't Ex. F; Ex. I at 25.)

Because petitioner was ordered deported from the United States and petitioner did not appeal this determination, petitioner no longer retains permanent resident status. The INS reserved the right to appeal from the immigration judge's decision of March 3, 2000. (Resp't Ex. F; Ex. H at 259.) In its appeal, the INS challenged only the immigration judge's finding that petitioner's

conviction was for a crime which was not particularly serious. (Resp't Ex. G.) Thus, petitioner's ultimate order of deportation was not appealed.

On December 12, 2000, the Board of Immigration Appeals ("BIA") determined that petitioner's conviction for criminal sexual conduct in the third degree was for a particularly serious crime, concluded that petitioner was statutorily ineligible for withholding of removal, and remanded the record to the immigration judge for a finding on petitioner's eligibility for deferral under the Convention Against Torture. (Resp't Ex. L.)

The immigration judge conducted hearings on January 25, February 8, March 22, and March 29, 2001. On March 29, 2001, the immigration judge rendered an oral decision granting petitioner deferral of removal to Liberia under 8 C.F.R. 208.17. (Resp't Ex. M; Ex. P.) At the hearing petitioner orally waived his right to an appeal of this decision. The INS, however, filed a timely appeal of the immigration judge's deferral decision with the BIA. (Resp't Ex. N.) The INS filed its brief on August 2, 2001, and petitioner filed his response brief on October 3, 2001. The board is currently considering the appeal, but at this time has not yet issued a decision.

Petitioner now files a petition for a writ of habeas corpus under 28 U.S.C. § 2241, *et. seq*, challenging his detention. For the reasons stated, the court denies petitioner's request for habeas corpus relief.

## DISCUSSION

### A. Standard of Review

Judicial review of immigration matters is limited. As the Supreme Court stated in Hampton v. Mow Sun Wong: "the power over aliens is of a political character and therefore subject only to narrow judicial review." 426 U.S. 88, 102 n.21 (1976). In Fiallo v. Bell, 430 U.S. 787, 792 (1977), the Supreme Court again underscored the "limited scope of judicial inquiry into immigration legislation." In Galvan v. Press, the Supreme Court emphasized this point, explaining:

> Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government. In the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process ... But that formulation of these policies is entrusted exclusively to Congress has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government. ... 347 U.S. 522, 531 (1954).

While this congressional power is subject to constitutional limitations, see Zadvydas v. Davis, 121 S. Ct. 2491, 2501 (2001),

the court's review of Badio's detention status is nevertheless narrow.

**B. Petitioner's Detention**

Petitioner contends that he is entitled to habeas corpus relief because his detention violates the United States Immigration and Naturalization Act and the Fifth, Sixth and Eighth Amendments. He cites Zadvydas v. Davis, 121 S. Ct. 2491 (2001) to support his position that the INS's authority to detain certain people to process them for deportation is subject to constitutional limits. While the court recognizes the constitutional limitations Zadvydas imposes on post-removal-order detentions, the court concludes that Zadvydas does not apply to petitioner's pre-removal-order detention. The court further concludes that § 1226(c) does not violated the Fifth Amendment's due process clause and therefore denies petitioner's request for habeas corpus relief.[1]

**1. Zadvydas Does Not Apply to Pre-removal-order Detentions**

Petitioner argues that his detention is unconstitutional under Zadvydas. Zadvydas, however, is limited to detained aliens, unlike Badio, who have received final removal orders and are awaiting removal from this country pursuant to 8 U.S.C. § 1231(a)(6). In Zadvydas, the Supreme Court considered "whether this post-removal

[1]Although petitioner also claims that his detention violates the United States Immigration and Naturalization Act and the Sixth and Eighth Amendments, the court finds these arguments unpersuasive, given the paucity of analysis petitioner's brief provides on these claims.

statute authorizes the attorney general to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." Id. at 2495. The Supreme Court held that the post-removal statute, when read together with the Constitution, "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 2498. The Court emphasized that "it does not permit indefinite detention." Id. In reaching this conclusion, the Court distinguished post-removal-period detention from "detention pending a determination of removability or detention during the subsequent 90-day removal period," finding that the former has no termination point. Id. at 2503.

While no circuit has determined whether Zadvydas applies to pre-removal-order detentions, two circuit courts that considered pre-removal-order detentions pre-Zadvydas concluded that they do not violate the Fifth Amendment due process clause. Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999)(mandatory detention statute does not violate due process), see also Richardson v. Reno, 162 F.3d 1338, 1364 n. 119 (11th Cir. 1998), rev'd on other grounds, 526 U.S. 1142 (1999)("Congress acts well within its plenary power in mandating detention of a criminal alien with an aggravated felony conviction facing removal proceedings."). The one district court that has considered whether § 1226(c) detentions are constitutional

post-Zadvydas found that Zadvydas does not apply to pre-removal-order detentions and concluded that such detentions satisfy procedural and substantive due process. Yanez v. Holder, 149 F. Supp. 2d 485 (2001).[2]

Following these decisions, this court concludes that Zadvydas does not support petitioner's claim because Zadvydas only applies to post-removal-order detentions. As the Supreme Court noted in Zadvydas, pre-removal-order proceedings do have a termination point. They are necessarily limited by the duration of the alien's removal proceeding. Unlike the post-removal-order detention in Zadvydas, detention during removal proceedings is not affected adversely by uncontrollable factors such as the recalcitrance of

[2]Pre-Zadvydas, district courts around the country were split on whether § 1226(c) is constitutional. See, e.g., Koita v. Reno, 113 F. Supp. 2d 737 (M.D. Pa 2000)(finding that mandatory detention violates alien's substantive due process rights); Radoncic v. Zemski, 121 F. Supp. 2d 814 (E.D. Pa. 2000)(holding that indefinite detention of an alien pending removal proceedings implicated a fundamental liberty interest and denied alien's due process rights); Son Vo v. Greene, 109 F. Supp. 2d 1281 (D. Colo. 2000)(holding mandatory detention statute unconstitutional); Danh v. Denmore, 59 F. Supp. 2d 994 (N.D. Cal. 1999)(finding that mandatory detention provision of Immigration and Nationality Act violated substantive due process as applied to resident aliens); Bouayad v. Holmes, 74 F. Supp. 2d 471 (E.D.Pa 1999)(holding mandatory detention of alien unconstitutional); Avramenkov v. INS, 99 F. Supp. 2d 210 (D. Conn. 2000)(finding that mandatory detention statute did not violate alien's substantive due process or equal protection rights); Okeke v. Pasquarell,80 F. Supp. 2d 635 (W.D. Tex. 2000)(holding mandatory detention statute does not violate substantive due process.); Diaz-Zaldierna v. Fasano, 43 F. Supp. 2d 1114 (S.D. Cal. 1999)(holding mandatory detention statute does not violate due process).

another nation's refusal to agree to prompt return of its nationals. To the contrary, detention during these proceedings is affected by factors within all of the parties' control, such as the scheduling of removal hearings and the alien's choice to challenge his removal or to seek discretionary relief or protection from removal. Thus, Zadvydas does not apply to petitioner's claim because pre-removal-order proceedings do have a termination point.

**2. Due Process**

Although Zadvydas does not apply to pre-removal-order detentions, petitioner is nevertheless entitled to due process. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 307 (1993). This protection applies to aliens that are in the United States legally and illegally. See Plyler v. Doe, 457 U.S. 202, 210 (1982). "[O]nce an alien gains admission to our country and begins to develop ties that go with permanent residency, his constitutional status changes accordingly." Landon v. Plasencia, 459 U.S. 21, 32 (1982).

The Fifth Amendment includes both procedural and substantive due process requirements. The substantive due process component precludes the government from engaging in conduct that "shocks the conscience," Rochin v. California, 342 U.S. 165, 172 (1952) or interferes with rights implicit in the concept of ordered liberty, Palko v. Connecticut, 302 U.S. 319, 325-26 (1937) overruled on

other grounds by Benton v. Maryland, 395 US 784 (1969). See Salerno, 481 U.S. 739, 746 (1987). The procedural due process requirement prohibits the government from depriving an individual of life, liberty or property without a fair procedure. See Mathews v. Eldridge, 424 U.S. 319, 350 (1976). The court finds that petitioner's detention satisfies both substantive and procedural due process.

**a. Substantive Due Process**

The scope of constitutional protections in deportation proceedings is more narrow than in a criminal proceeding. INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984). The Salerno standard dictate that § 1226(c) will be upheld if the statute is regulatory in nature and not excessive in its purpose. United States v. Salerno, 481 U.S. at 747. Since § 1226(c) is regulatory in nature, Cardoso v. Reno, 127 F. Supp. 2d 106, 113 (D. CT 2001); Welch v. Reno, 101 F. Supp. 2d 347, 355 (D. MD 2000); Reyes v. Underdown, 73 F. Supp. 2d 653, 657(W.D. LA 1999), the next step in Salerno is to determine whether § 1226(c) is excessive in furthering its legislative objective.

In Salero, defendants were committed for pretrial detention pursuant to the Bail Reform Act and asserted that this pretrial detention violated substantive due process. Salerno, 481 U.S. at 744. In evaluating whether the pretrial detention was excessive, the Supreme Court recognized that the statute's purpose was to

prevent danger to the community. Id. at 747. The Court also noted that the Act limited the circumstances under which detention may be sought to the most serious of crimes. Id. Further, the Supreme Court found that the period of detention was limited by the Speedy Trial Act and that the confinement conditions reflected the detention's regulatory nature. Id. Based on these factors, the Supreme Court concluded that the pretrial detention was not excessive and thus did not violate substantive due process, emphasizing that "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." Id. at 748.

In Yanez v. Holder, 149 F. Supp. 2d 485 (N.D. Ill. 2001), petitioners, aliens removable as aggravated felons, sought a writ of habeas corpus claiming that their pre-removal-order detentions violated the Fifth Amendment's due process clause. In evaluating their substantive due process claim, the court noted that all the defendants were convicted of criminal offenses and did not contest such convictions. The court further noted that the mandatory detention was limited to a small class of aliens convicted of certain enumerated crimes and that Congress, by mandating the detention of these aliens, presumed that such aliens pose a danger to the community and/or flight risk. Id. at 493. The court therefore concluded that § 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c)(1), as amended by the Illegal

Immigration Reform and Immigrant Responsibility Act of 1996, did not violate petitioners' substantive due process rights "because the means that Congress chose to further its legislative regulatory goals are not excessive." Id.

As in Salero and Yanez, petitioner's detention in this case does not violate substantive due process. Similar to the Act in Salero, § 1226(c) limits the class of persons who can be detained prior to a final removal order being issued. Moreover, as in Salero and Yanez, the purpose of mandatory detention under § 1226(c) is to protect the public from potentially dangerous criminal aliens. In addition, as in Yanez, § 1226(c) seeks to prevent aliens from absconding during removal proceedings, to correct procedures under which twenty percent of criminal aliens released on bond did not report for deportation hearings and to restore public faith in the immigration system. See S. Rep. No. 104-48, 1995 WL 170285 at 1-6, 9; Cardoso 127 F. Supp. 2d at 113. Moreover, petitioner's detention is limited by the length of the deportation proceedings, and, like the petitioner in Yanez, petitioner in this case is convicted of one of the enumerated crimes and does not contest his conviction. Thus, as in Salero and Yanez, the aggregation of these factors indicates that the petitioner's detention does not violate substantive due process.

**b. Procedural Due Process**

Procedural due process requires that, "when government action depriving a person of life, liberty or property survives substantive due process scrutiny, it must still be implemented in a fair manner." Salerno, 481 U.S. at 746. In determining whether a process is fair, the court considers (1) the private interest that will be affected by the official action, (2) the probability of error and the effect of additional safeguards on that rate of error and (3) the government interest involved, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews, 424 U.S. at 335.

In Parra v. Perryman, petitioner, an alien who had committed an aggravated felony, sought a writ of habeas corpus. 172 F.3d 954, 956 (7th Cir. 1999). He argued that his pre-removal-order detention under § 1226(c) violated procedural due process. In conducting its due process analysis under Mathews, the court in Parra concluded that the alien's interest was "liberty *in the United States* by someone no longer entitled to remain in this country," that the probability of error was zero since the alien conceded all the elements requiring removal and that the public interest was "substantial," given the high flight rate of those released on bail. Id. Based on this analysis, the court concluded

that aliens covered by § 1226(c) who have little hope of obtaining relief from removal do not have a procedural due process right to be released from detention pending their removal proceedings. Id.

Like the petitioner in Parra, petitioner has the liberty interest of a person who does not have a legal right to remain in the country, whereas the government's interest in prohibiting the flight of detained aliens[3] and protecting public safety is substantial. Moreover, as the court found in Parra, the probability of error is zero since petitioner conceded his charge of removability. Further, comprehensive administrative procedures protect against the erroneous application of § 1226(c). Sections 3.19 and 236.1 of Title 8 of the Code of Federal Regulations govern jurisdiction of the INS and immigration judge to make bond determinations. See 8 C.F.R. §§ 3.19 & 236.1 (2000). An alien may seek a redetermination from the immigration judge in order to dispute his or her inclusion within a category of aliens covered by § 1226(c)'s detention requirement. See id. at §§ 3.19(h)(2)(i)(D), (h)(2)(ii) & 236.1(d)(1). An alien may also appeal any adverse decision to the BIA. See id. at § 236.1(d)(3). Thus, as in Parra,

---

[3]Between 1993 and 1995, the United States Senate undertook a major study of the immigration laws, including the detention provisions pertaining to criminal aliens. See, e.g., S. Rep. No. 104-48, 104th Cong., 1st Sess. (1995)(1995 WL 170285 (Leg. Hist.) at 1, 5). The Senate cited one report which showed that in 1993, out of 1695 orders to surrender for deportation sent to criminal and non-criminal aliens, 1486 of the aliens (87.7%) failed to report for deportation. Id. at 23.

on balance, petitioner's detention satisfies the procedural due process requirements and petitioner does not have a right to habeas relief under the Fifth Amendment.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that petitioner's petition for a writ of habeas corpus is denied.

Dated: November 21, 2001

David S. Doty, Judge
United States District Court

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd